#08813

ORIGINAL

FILED
AUG 28 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

DIGITAL TECHNOLOGIES, INC.,
Plaintiff,
v.
THE UNITED STATES,
Defendant.

No.: 08-604 C

## COMPLAINT

Plaintiff Digital Technologies, Inc. (hereinafter "DTI" or "Plaintiff") brings this civil action for relief from a final decision dated August 30, 2007 ("Final Decision") from Thomas M. Uberto, Contracting Officer for the U.S. Customs and Border Protection, denying DTI's August 10, 2007 claim ("Claim") made pursuant to the Contract Disputes Act, 40 U.S.C. § 601 et seq., in the amount of $9,377,985.10, for breach of Contract No. HSBP10-06-D-01287 (the "Contract" or "DTI Contract"). The Claim and Final Decision are annexed hereto respectively as Exhibits A and B.

## JURISDICTION

1. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1491(a). Plaintiff brings this action pursuant to 41 U.S.C. § 609.

## THE PARTIES

2. DTI is a Virginia corporation with its principal place of business located at 45150 Business Court, Suite 550, Sterling, Virginia. DTI is a family owned and operated company which provides IT products, maintenance services and professional support to federal agencies, state and local governments and corporations.

3. Defendant is the United States of America ("Government"), acting by and through the U.S. Customs and Border Protection ("CBP"), and its officers, employees, and agents.

## NATURE OF ACTION

4. DTI seeks a judgment for damages sustained by DTI as a result of the Government's multiple breaches of the Contract.

5. The Contract was a single source fixed-unit-price, indefinite delivery/indefinite quantity ("IDIQ") contract with a base period of September 1, 2006 through April 30, 2007 and four one-year option periods. DTI received only a one-month task order under the Contract, and the Government failed to exercise any of the options under the Contract. During its one month of performance, DTI met and/or exceeded all of its performance obligations under the Contract.

6. The Government, by and through the CBP and its procurement officials, including but not limited to Thomas M. Uberto, Contracting Officer, repeatedly breached the Contract, and acted maliciously, oppressively, and with the intent to injure and "get rid of" DTI, by:

(a) awarding DTI only a ***one-month*** task order under the Contract and unilaterally amending DTI's Contract, permitting DTI's competitor, Automation Technologies, Inc. ("ATI"), whose bid was rejected by the Government in awarding the Contract to DTI, to be eligible and compete for work originally designated by the Government as exclusively within the scope of work governed by DTI's Contract.

(b) competing the balance of the work contemplated in the Contract in the form of a single "task order" despite representations to DTI, the Government Accountability Office ("GAO"), and this Court in a prior related proceeding (Automation Tech., Inc. v. U.S., 73 Fed. Cl. 617 (2006)), that it would not do so unless there were "performance issues" with the incumbent, DTI;

(c) permitting ATI to compete for the balance of the work contemplated by the DTI Contract under an illegal contract which CBP repeatedly represented to DTI, GAO, and to this Court as an illegal contract;

(d) failing to give DTI a fair opportunity to compete and be considered for the balance of the work contemplated in the DTI Contract by allowing an improper auction during the task order competition between DTI and ATI;

(e) failing to give DTI a fair opportunity to compete and be considered for the balance of the work by inaccurately describing the scope of work in the Request for Quotations seeking offers from DTI and ATI for the task order, and withholding key information pertaining to the actual scope of work known to ATI but not DTI in its task order competition, and then subsequently amending the scope of work to reflect the actual requirements of the Government and increasing the contract amount over and above the amount offered by DTI and ATI in the task order competition;

(f) failing to give DTI a fair opportunity to compete and be considered for the balance of the work contemplated in the DTI Contract by awarding a task order to ATI for a ten month base period (which covered the remainder of the base period of DTI's Contract) plus four one-year options; and

(g) improperly constructively terminating DTI's contract by failing to exercise any options in express violation of representations made by CBP to DTI, GAO, and this Court of its intention to compete additional work.

**FACTS WHICH SUPPORT CLAIMS**

7. On September 30, 2005, CBP issued Solicitation No. HSBP10-05-R-0541 ("2005 Solicitation" or "2005 RFP") for the purpose of obtaining on-site preventive and remedial maintenance services for CBP mainframe computing equipment and associated peripherals and storage subsystems for the CBP Data Center Complex located in Springfield, Virginia and vicinity ("Services").

8. At the time the 2005 Solicitation was issued, ATI was the incumbent contractor for the Services under a contract with CBP which contract expired on December 31, 2005.

9. The Solicitation provided that the award would be made using FAR Part 15 competitive negotiation procedures and be based upon a "best value" determination by the Government. The 2005 Solicitation contemplated the award of a single source fixed-unit-price, indefinite delivery/indefinite quantity ("IDIQ") contract, commencing January 1, 2006, with a guaranteed minimum of $2500 worth of orders and annual ordering ceilings of $9.9 million in a one-year base period and four subsequent option periods.

10. Orders placed against the contract would be on a firm-fixed-price basis, calculated using a per unit all-inclusive monthly maintenance charge contained in a pricing schedule offered by the contractor multiplied by the quantity of equipment to be serviced specified in fourteen different Contract Line Item Numbers ("CLINs"). The Solicitation included a listing of all existing hardware requiring maintenance. Maintenance services for all of the types of equipment contained on the existing hardware listings were to be included in the price of the CLINs.

11. The Solicitation included FAR Clause 52.216-18 which provides, in part, that supplies and services to be furnished under the contract to be awarded will be ordered by the issuance of task orders, and that such orders "may be issued from award date through one month prior to contract expiration." The Solicitation, in addition, included FAR Clause 52.217-9, which provides in part that the "total duration" of the contract, "including the exercise of any options . . . shall not exceed 5 years." Thus the maximum contract term contemplated by the Solicitation was five years -- between January 1, 2006 through December 31, 2010.

12. Based on the sworn testimony of CBP Officials in later proceedings before GAO and this Court, it was never the intention of the Government to make multiple awards from the 2005 Solicitation, and the 2005 RFP did not contain or reference FAR 25.216-27 ("Single or Multiple Awards"). The Government's intent was manifested by CBP's Determinations and Findings dated September 24, 2005 that "the projected task orders are so integrally related that only a single contractor can reasonably perform the work," and the "expected cost of

administration of multiple contracts outweighs the expected benefits of making multiple awards." According to the Government's pre-solicitation documents, the IDIQ vehicle was used because the Government was not in a position to estimate with certainty the Services required during the term of the contract -- ***not*** because it anticipated using more than one contractor.

13. On October 2005, ATI, DTI and one other offeror submitted proposals in response to the 2005 RFP. On January 4, 2006, CBP published its notice of award to ATI under Contract Award No. HSBP10-06-C-01143 ("ATI 2006 Contract") in the amount of $49,500,000 (ceiling for base year and 4 options). The ATI 2006 Contract provided for an initial one-year term, running from January 1, 2006 through December 31, 2006, with a right to extend the contract for four additional years through the exercise by CBP of four one-year options. ATI's 2006 Contract specifically prohibited the issuance of orders in the last thirty days of the base year term and limited the term of the contract (which it was required to do by statute and regulation) to five years.

14. ATI's incumbent contract expired on December 31, 2005, and its term was not extended.

15. Following an initial protest with CBP which was summarily dismissed on January 11, 2006, DTI filed a protest with GAO, raising a variety of defects associated with the Government's evaluation of the proposals and subsequent award to ATI ("DTI Bid Protest"). In order to defeat the automatic stay requirements in the Competition in Contracting Act, CBP promptly issued a Determination and Findings ("January 2006 CICA Override D&F") in which CBP averred that there was an "immediate and urgent need for maintaining the system mission-critical equipment," and that "no alternatives to resumption of the contract award (and placement of a necessary initial order covering no more than 120 days) are deemed feasible."

16. The January 2006 CICA Override D&F included the following determination: "it is in the Government's best interest to authorize resumption of performance under [the ATI 2006 Contract], including placement of a necessary initial order covering no more than 120 days."

Following the January 2006 CICA Override D&F, CBP issued two delivery orders to ATI (Nos. HSBP10-06-J-10058 and -10143) for Services for a 120-day period under the 2006 ATI 2006 Contract in the amounts of $41,324 and $3,175,036 respectively. The orders expired as of April 30, 2006.

17. On March 20, 2006, GAO conducted an "Outcome Prediction" conference in the DTI Bid Protest proceeding in which it preliminarily indicated that CBP improperly entered into discussions with ATI with regard to the manner in which unit pricing was to be offered, and that the agency had failed to fairly evaluate DTI's price proposal. GAO recommended that the procurement be resolicited using a modified pricing table so that all offerors were on an equal playing field when submitting offers. GAO indicated that if such actions were not taken, the protest was likely to be sustained.

18. Three days later, on March 23, 2006, CBP's Office of Chief Counsel advised GAO in a letter that CBP would amend the 2005 Solicitation with respect to the pricing and services information, ask each of the three offerors to submit a revised pricing proposal, conduct a new price evaluation, and re-award the contract. More specifically, CBP advised GAO that it would revise the solicitation to include a "less ambiguous" Pricing Format chart and provide a current list of inventory grouped by CLINs, as a sample for the offerors to prepare their unit pricing.

19. CBP told GAO, in light of the January 2006 CICA Override D&F, that "[t]he agency intends to leave in place the current awardee [i.e., ATI], ***pending the new award decision***." (Emphasis added). In reliance on this letter addressing corrective action by the agency, the GAO dismissed the protest as "academic" in a decision dated March 23, 2006.

20. On March 31, 2006 and April 6, 2006, CBP issued formal amendments to the 2006 Solicitation and asked for final price proposal revisions by April 10, 2006. The 2005 Solicitation was not amended to include appropriate FAR clauses or provisions providing for multiple awards of task orders under the contemplated contract.

21. Each of the three original offerors submitted price proposal revisions. As a result of the new competition, DTI, and DTI alone, was awarded the Contract. Although ATI received a slightly higher technical score (9 percentage points), the Government awarded the Contract to DTI on the basis that DTI's cumulative monthly charge for the 14 CLINs (based on the unit price offered multiplied by the quantity of equipment identified in the inventory for each of the CLINs) was considerably less than ATI's offer ($674,058.73 monthly charge for base year vs. $777,255.00 for base year). DTI's offer was determined by the agency as representing the best value, considering price and technical factors identified in the 2005 RFP.

22. Although the amendments to the 2005 RFP provided that the effective date for the new award would be May 1, 2006 (coinciding with the 4-month task order issued to ATI), it was not until August 4, 2006 that CBP announced its award to DTI. On the same day, August 4, 2006, CBP advised ATI by letter that its proposal for the 2005 RFP was determined to not represent the best value to the Government, was rejected, and that DTI would be the awardee, effective September 1, 2006.

23. In its August 4, 2006 letter to ATI announcing that it had decided to award the Contract to DTI, CBP disclosed to ATI not only the total price but also the per unit monthly price DTI had bid for each of the 14 CLINs. The August 4, 2006 letter was followed by an August 7, 2006 "written debriefing" in letter form to ATI, in which the Government stated that it was "not willing to pay significantly more for a minor difference in the non-cost or price factors rating."

24. The DTI Contract provided for a base period of September 1, 2006 through April 30, 2007, and four one-year option periods. The DTI Contract contained no procedures for competing task orders among multiple awardees.

25. During the time the Government reopened the 2005 Solicitation after representing to GAO that it would take corrective action (which caused GAO in reliance thereon to dismiss DTI's protest as moot), the Government continued to issue task orders under the

January 2006 ATI Contract, extending the performance dates beyond the original April 30, 2006 cut-off established in the January 2006 CICA Override D&F.

26. On April 28, 2006, CBP issued Delivery Order No. HSBP10-06-J-11174, extending the period for providing the Services until June 30, 2006, at a price of $1,568,438.00. On June 30, 2006, CBP issued Delivery Order No. HSBP10-06-J-11849, extending the period for providing the Services until July 31, 2006, at a price of $781,954. On July 25, 2006, CBP issued Delivery Order No. HSBP10-06-J-12078, extending the period of providing the Services until August 31, 2006, at a price of $774,940. The last Delivery Order was issued one day prior to the actual execution by the Government of the DTI Contract (on July 26, 2006). The prices paid to ATI were well in excess of the prices offered and accepted by the Government in the DTI Contract.

27. As the Government later acknowledged in sworn statements and briefs submitted to GAO and this Court, the task orders awarded to ATI were illegal sole source procurements because the January 2006 ATI Contract had been rendered a nullity as a result of the Government's decision to re-open competition for the Services in light of GAO's assessment that DTI's protest had merit. For instance, on September 19, 2006, CBP's Office of Legal Counsel advised GAO that ATI was the beneficiary of an "improper contract award." CBP's lawyers advised GAO that ATI's task orders were "bridge" task orders to prevent CBP from going without Services during the pendency of the legal challenges, a "mere fluke in the bid protest process," and "not [] a properly-won contract award."

28. On August 11, 2006, ATI filed a protest with GAO of CBP's decision to award the 2005 Solicitation to DTI. On August 16, 2006, CBP's contracting officials executed a second CICA Override Determinations and Findings ("August 2006 CICA Override D&F") stating that ATI's protest was without basis and that contract performance by DTI would result in significant savings to the Government. Following the override decision, CBP issued a task order dated

August 17, 2006 for Services at DTI's bid price for the period September 1, 2006 through October 31, 2006 (approximate monthly charge of $670,000).

29. The task order awarded to DTI was based on the same per unit monthly prices that DTI had offered to the Government in the competition with ATI for the Contract. As stated above, the Government had already disclosed to ATI the per unit monthly prices offered by DTI and accepted by the Government by letter dated August 6, 2006. The Government's disclosure of DTI's unit pricing information, the same information on which DTI's task orders would be based, was in violation of the Government's stated policy of withholding task order unit pricing information from disappointed offerors on the basis that it was exempt from disclosure under the Freedom of Information Act.

30. ATI challenged the August 2006 CICA Override D&F, in a proceeding before this Court, which resulted in a decision by this Court on August 31, 2006, setting aside the override decision as arbitrary and capricious. Automation Technologies, Inc. v. U.S., 72 Fed. Cl. 723 (2006).

31. As a result of this Court's decision, the Government issued, on September 1, 2006, a modification to DTI's Task Order "deobligat[ing] all funding." At the same time, it issued ATI a new task order (No. HSBP10-06-J-12777) under its illegal contract for a three-month period ending November 30, 2006, at a price of $2,325,366 (representing an increased cost of approximately $210,000 for the two-month period when compared with the DTI cancelled task order). In subsequent proceedings before GAO and this Court, both the CBP Contracting Officer and CBP's Office of Legal Counsel characterized this task order as an illegal contract. As stated, the new task order was issued under the January 2006 ATI Contract which had been rendered a nullity by the prior CBP action. CBP did not issue a new contract nor did it engage in the sole source procedures required by FAR Subpart 6.3.

32. In defense of ATI's bid protest, CBP began to change its position with respect to the January 2006 ATI Contract. While continuing to characterize it as an illegal contract, CBP's

Office of Chief Counsel, by means of a Declaration dated August 22, 2006, advised GAO that ATI lacked standing to challenge the award of the Contract to DTI because ATI's "contract is in full force and effect today, and will remain so until January 4, 2007." CBP argued that ATI had already received orders well above the guaranteed minimum of $2,500.00 and therefore it had failed to show competitive prejudice and lacked standing to challenge the award.

33. In reliance on these representations, GAO dismissed ATI's protest in a September 6, 2006 decision, finding that ATI, because it was eligible for task orders under its own contract, had no standing to challenge the award of task orders to DTI under its contract. Following this dismissal, CBP modified ATI's task order to terminate and discontinue all of ATI's work as of October 31, 2006, deobligating further funding.

34. In discussions on September 7 and 8, 2006 between ATI's Senior Vice President for Programs and the Contracting Officer's Technical Representative, the Government confirmed that CBP intended to award all the contract work to DTI, effective November 1, 2006, and to use only DTI for its future requirements. CBP repeatedly advised ATI that the 2005 RFP was and has always remained a "winner-take-all" competition.

35. On September 12, 2006, ATI requested, by means of a motion that GAO reconsider its decision denying its protest. In reply, CBP's Office of Chief Counsel advised GAO in a statement filed with GAO, dated September 19, 2006, that ATI should not be allowed to "reap the benefits of a contract that the GAO has already indicated was likely improperly awarded in the first place." CBP argued that ATI had already received under its "improper contract" in excess of the contract minimum ($2,500), and therefore was not prejudiced as a result of the award to DTI. CBP advised the GAO that "[ATI] is using the bid protest process to remain in possession of an improperly awarded contract, and thus thwart the congressional intent of the bid protest process by preventing the Agency from implementing corrective action." Finally, and importantly, CBP's Office of Chief Counsel stated that the Government "***cannot exercise the options under [ATI's] contract***" because under the circumstances (based on

DTI's substantially lower contract offer), the Government is not in a position where it can determine that exercising the option with ATI is "'the most advantageous method of fulfilling the Government's need.'" (Quoting FAR 17.207). GAO denied ATI's motion for reconsideration in an order dated October 4, 2006.

36. After GAO dismissed its protest, ATI commenced a bid protest action in this Court on October 7, 2006. In the Government's pleadings seeking a dismissal of the protest, the Government reiterated its argument that the protest should be dismissed because of ATI's lack of standing due to ATI's having its own IDIQ contract with CBP. However, upon information and belief, in order to enhance its chances of obtaining a dismissal of ATI's protest in this proceeding based on ATI's lack of standing, CBP's lawyers argued in CBP's motion to dismiss that the existence of the two contracts "is the essence of a multiple award ID/IQ contract." CBP represented to this Court in a sworn statement by the Contracting Officer, dated October 12, 2006, that CBP now believed that it was advantageous to the Government to have the ability to make multiple awards for the Services through the vehicles of the DTI Contract and the ATI 2006 Contract (which the Government had previously described to the GAO just weeks before as illegal, improper, and one which could not be extended by means of an exercise of an option).

37. However, in the same statement by the Contracting Officer (October 12, 2006), the Government represented to this Court "[w]hile CBP's intent and the nature of the work merit having only one contractor perform work at any one time, CBP may utilize the services of either contractor over the coming months should severe performance difficulties arise with the incumbent [i.e., DTI]." In a statement directly contradictory to CBP's September 19, 2006 statement to GAO, CBP's Contracting Officer advised this Court that CBP "has not yet reached a decision as to whether to exercise the options for out years for ATI, DTI, or both, in light of the possibilities of performance under both contracts now available to CBP and the potential to evaluate the performance of both in performing the required tasks in the coming months."

38. CBP's contradictory and inconsistent representations to both GAO and this Court were in bad faith and misrepresentations of CBP's true intent with regard to the procurement. CBP intended all along that only one contractor would perform the work, but used the multiple award devise as a legal ruse as a means of seeking a quick dismissal of ATI's protest.

39. In a decision dated October 27, 2006, this Court dismissed ATI's complaint on the basis that ATI's eligibility for an award of the Services under its contract deprived it of standing to challenge CBP's award of DTI's contract. 73 Fed. Cl. 617. This Court, at least in part, relied upon the representations by CBP with respect to its intent in making its decision.

40. The Government's intention all along and to this day continues to be to award the Services to one contractor, and not to provide another contractor a fair opportunity to compete under a multiple award task order scheme.

41. The Government accomplished this goal by means of the legal maneuverings available to it under the automatic stay provisions of CICA and the ability to override such provisions. Initially, it determined to award the Services to ATI. When DTI challenged the decision, it invoked the CICA override provisions which permitted ATI to continue performing up until CBP undertook corrective action, resolicited offers, and made award to DTI (at a price considerably lower than it was paying ATI).

42. When ATI subsequently challenged the award to DTI, CBP attempted to keep its single source contract -- this time with DTI -- by using the override mechanism. When ATI successfully challenged the use of the override, CBP went back to ATI and advised this Court that it intended to give the rest of the work to the victor of the protest challenge (absent performance problems).

43. However, as a matter of expediency and additional legal maneuvering, CBP developed a legal strategy designed to nip ATI's protests in the bud. That strategy was to say that because of the quirks of the laws governing protests, both parties had an IDIQ contract to perform the same services (although DTI had as of October 27, 2006 not performed one day on

the contract), and therefore ATI had no standing to challenge the award of the decision to DTI (after it successfully challenged the award to ATI). This strategy worked and resulted in the dismissal by GAO and this Court of ATI's bid protest action on October 27, 2006.

44. Once the Government adopted this strategy, it received pressure from ATI's lawyers to convert DTI's Contract (which because of the prior protests now had a base period of September 1, 2006 through April 30, 2007 but had received no task orders) and ATI's separate contract (which the Government had previously represented as illegal) into true multiple award contracts pursuant to the "Fair Opportunity Procedures" under FAR 16.505(b)(1)(ii).

45. In simultaneous modifications to both DTI's Contract and ATI's illegal contract, the Government appointed a Task Order Ombudsman, Sandra Bell, and provided that DTI and ATI would be eligible for future task orders of no less than one month per order. In the modification to DTI's Contract (P00001, dated October 27, 2006), CBP assured DTI that it "'ha[d] information available to ensure each awardee is provided a fair opportunity to be considered for each order,'" quoting FAR 15.606(b)(1)(ii).

46. The procedures in Modification P00001 to DTI's Contract provided that "subsequent" task orders would be issued on a "best value determination" with price and "past performance on earlier task orders" as the only factors to be considered. This use of past performance on prior task orders as an evaluation factor was in breach of the Government's obligation to provide DTI a fair opportunity to compete since DTI had never been permitted to perform on any task orders because of CBP's initial improper award to ATI and CBP's subsequent issuance of task orders only to ATI.

47. The cover page of Modification P00001 indicated that the modification was done to reflect administration changes pursuant to FAR 43.103(b). The Government's representation that Modification P00001 was an administrative change was false -- the change represented a cardinal change to and breach of DTI's Contract.

48. On the same day, October 27, 2006, CBP issued to DTI under its Contract a one-month task order, HSBP1007J14203 (for the period November 1 through 30, 2007), in the amount of $669,244.30, based upon the unit prices offered by DTI after the Services were resolicited (following DTI's successful protest in March 2006). As stated, such unit prices had already been disclosed to ATI. CBP advised DTI, consistent with Modification P0001, that future task orders would be competitively bid between DTI and ATI. CBP's statement was in express violation of the representations made to GAO one month before, and to this Court weeks before, that it did not intend to compete additional task orders unless the incumbent contractor (DTI) has serious performance difficulties.

49. DTI began performing the Services on November 1, 2006 pursuant to the November task order. DTI met and/or exceeded its performance obligations during the one-month period of performance. DTI experienced no performance problems, and was never cited by the Government as having any performance problems during the course of its performance.

50. On November 15, 2006, CBP issued to ATI and DTI under their respective contracts a Request for Quotations (HSB10-07-Q-0957) ("RFQ") for a ***single task order*** for a ten-month base period (commencing December 1, 2006 and ending September 30, 2007) and four option years (through September 30, 2011). In other words, the Government indicated its intent to compete a single task order, ostensibly under a multiple-award task order IDIQ contract, which CBP maintained arose from the January 2006 RFP, which would result in the awardee being the ***sole contractor*** for the remainder of the base year contemplated by the original solicitation and the remainder of the base year in ATI's illegal contract (through December 31, 2006), the remainder of the truncated base of DTI's contract (through April 31, 2007), an additional five months (through September 30, 2007), and the possibility (by means of the exercise of options) that the awardee would be the sole contractor through September 30, 2011.

51. Unless DTI was successful in this new "competition" -- for essentially the same work that DTI competed and won in July 2006 -- the Government's actions would effectively deprive DTI of any additional work.

52. Moreover, if ATI were successful in this new "competition," it would constitute a de facto exercise of the Government's option under the ATI 2006 Contract, an action which CBP had just two months earlier represented to the GAO that it could not do.

53. Two days after the issuance of the RFQ, on November 17, 2006, the Government issued an unsigned Modification P00002 to DTI's Contract and ATI's illegal contract which, inter alia, modified the "Fair Opportunity Procedures" included in Modification P00001. Significantly, the clause "fair opportunity for consideration" was amended to permit the Government to issue "***[o]ne*** or more task orders during the ordering period of the contract." The modifications included an "effective date" of October 27, 2006.

54. The authority for the modifications (P00002) providing that the Government could issue one task order to cover the remaining period of the contracts was identified on the face of the modifications as "By Mutual Agreement." Neither the Government nor DTI signed the modification issued pursuant to DTI's Contract. ATI signed the modification issued pursuant to its illegal contract on November 16, 2006, and CBP's Contracting Officer signed it on November 30, 2006.

55. The RFQ used the procedures in Modification P00002 which, as stated, was issued after the issuance of the RFQ and was never agreed to by DTI.

56. The RFQ was issued consistent with CBP's strategy to use one contractor to consistently perform the Services. Its issuance and the award process that followed was in violation of the clause included in Modification P00001 to DTI's Contract requiring the Government to provide DTI a fair opportunity to compete for task orders in increments of one month or more for the Services.

57. The RFQ gave DTI and ATI less than two weeks to submit a proposal. The stated due date was November 27, 2006. The short period of time was designed by CBP so that it would award a contract to ATI on or before November 30, 2006 to avoid the prohibition in ATI's illegal contract that task orders could not be awarded in the month period preceding the expiration date (December 31, 2006). These procedures deprived DTI of a fair opportunity to compete for the task order.

58. The RFQ required the offerors to submit unit pricing for the same CLINs included in the 2005 Solicitation and covering approximately the same period of time. ATI now had the significant and unfair advantage of knowing the unit prices that had previously been offered by DTI. Accordingly, the RFQ constituted an improper and illegal auction giving ATI the opportunity to supplant DTI as the contractor for the January 2006 RFP. This represented a breach of the Government's obligation to provide DTI a fair opportunity to compete.

59. The RFQ significantly misstated the types and numbers of equipment which required maintenance under the contract. ATI, having been the incumbent contractor prior to 2006, and having performed for ten of the eleven months of 2006, had superior knowledge with respect to the true inventory of equipment and whether such equipment required maintenance or was still under a manufacturer's warranty. This permitted ATI to structure an offer that would be lower than DTI's in response to the RFQ in anticipation that the task order, once awarded, would need to be modified in order to accurately reflect the actual equipment needed to be serviced under the task order.

60. DTI raised these issues with CBP and the newly appointed Ombudsman orally and by letter dated November 21, 2006. DTI received no meaningful response. The Ombudsman, in particular, completely abdicated her responsibilities to DTI, as an offeror, to review DTI's complaints and ensure that DTI was given a fair opportunity to be considered, as required by FAR 16.505(b)(5).

61. DTI and ATI submitted a quote in response to the RFQ on November 27, 2006. Each of the offerors submitted quotes for the base 10-month period and the four one-year options. DTI's monthly cumulative price for the base 10-month period was the same at it had proposed in its original revised offer: $674,058.73. ATI's offer was $605,697.00 -- more than $170,000 less than its prior offer. For each of the respective option years, DTI steadily decreased its offer while ATI's offer remained the same for each of the option years. On November 30, 2006, three days after he received the offers, the Contracting Officer notified DTI that an award under the RFQ had been made to ATI based upon the technical ratings and the prices proposed. ATI, in possession of DTI's prior unit pricing and with the superior knowledge it had gained of the Government's actual requirements, significantly underbid DTI.

62. Had DTI been in possession of the same information that ATI and CBP had with respect to the nature and levels of equipment to be serviced, including the government's installation plans for new equipment under warranty, DTI's offer would have been approximately the same or lower than ATI's bid.

63. As a result of Freedom of Information Act litigation pursued by DTI in the United States District Court for the Eastern District of Virginia, DTI has now learned that the task order awarded to ATI was subsequently modified (and made effective, December 1, 2006), to change the description of the equipment to be serviced and to increase the net monthly cumulative charge by $51,402. DTI has also learned that CBP exercised its option to extend ATI's contract and task order (for the period October 1, 2007 through September 30, 2008), and agreed to pay ATI a monthly charge of $677,628 -- an amount greater than DTI's offer for the base year and the first option year, and $72,000 in excess of what ATI bid for the first option year in response to the RFQ.

64. After the unfair competition for the task order in December 2006, DTI received no further work nor was it asked to participate in any additional task order competitions.

65. CBP did not exercise its option to extend DTI's Contract so that it expired on April 30, 2007. The failure to exercise DTI's option effectively eliminated the multiple award IDIQ mechanism the Government represented to GAO and this Court that it wanted in connection with the procurement of the Services.

**COUNT I**
**Abuse of Discretion and Bad Faith**

66. Paragraphs 1 through 65 of this Complaint are incorporated in this Count by reference as if fully set forth herein.

67. CBP had no intention of maintaining two contractors under a multiple award procurement, and ignored fair opportunity procedures that it included in DTI's contract only as a legal device to argue before this Court that ATI lacked standing to protest CBP's decision to award the Contract to DTI.

68. CBP structured the RFQ which followed this Court's October 27, 2006 dismissal of ATI's protest in a way which was designed to get rid of either DTI or ATI by soliciting offers for a task order whose period of performance (including options) extended beyond the base and option years provided in DTI's and ATI's contracts.

69. CBP issued the RFQ by means of a putative bilateral modification to DTI's contract that was neither agreed to nor signed by either party.

70. CBP stacked the deck in favor of ATI by giving it access to the unit prices offered by DTI upon which CBP's award of DTI's one-month task order was based and permitting an illegal auction, misrepresenting the actual levels and types of equipment described in the RFQ (knowing that ATI would be at a competitive advantage because of its incumbent position), and shortening the period of time for evaluation (and thereby not permitting a proper evaluation or an accurate disclosure of equipment to be serviced under the task order) and award so as to avoid the prohibitions in ATI's contract permitting the award of task orders within 30 days of the contract's expiration date.

71. Subsequent to its award to ATI of the task order, CBP then changed the level and description of equipment to be serviced and permitted an increase in the contract price of over $50,000 per month.

72. Subsequent to its award to ATI of the task order, CBP allowed DTI's contract to lapse by not exercising any options in violation of representations made to GAO, this Court and to DTI that it intended to employ a multiple award task order scheme in connection with its procurement of the Services.

73. CBP then exercised an option to extend ATI's contract and task order from October 1, 2007 to September 30, 2008 (which, but for the award of the task order, would have expired on December 31, 2007), and increased the option year monthly cumulative price to be paid to ATI by in excess of $77,000 over the option price bid by ATI, and by an amount well in excess of DTI's bid for the same year of services. CBP exercised its option to extend ATI's contract after it has specifically represented to GAO that it would not and could not do so under pertinent provisions of the FAR.

74. As a result of CBP's actions, DTI is entitled to damages in the form of lost profits for the base period of the DTI Contract and for each of the option periods.

## COUNT II
## Breach of Contract -- Fair Opportunity to Compete

75. Paragraphs 1 through 74 of this Complaint are incorporated in this Count by reference as if fully set forth herein.

76. For the reasons stated above, the Government breached its obligation to provide DTI with a fair opportunity to compete for task orders under its contract.

77. As a result of CBP's actions, DTI is entitled to damages in the form of lost profits for the base period of the DTI Contract and for each of the option periods.

## COUNT III
## Breach of Contract -- Fair Opportunity to be Considered for Additional Work

78. Paragraphs 1 through 77 of this Complaint are incorporated in this Count by reference as if fully set forth herein.

79. For the reasons stated above, the Government breached its obligation to provide DTI with a fair opportunity to be considered for additional work above and beyond its one-month task order for the period November 1-30, 2006.

80. As a result of CBP's actions, DTI is entitled to damages in the form of lost profits for the base period of the DTI Contract and for each of the option periods.

## COUNT IV
## Breach of Contract -- Covenant of Good Faith and Fair Dealing

81. Paragraphs 1 through 80 of this Complaint are incorporated in this Count by reference as if fully set forth herein.

82. DTI's Contract included an implied obligation on the part of the Government that it would act in good faith and deal fairly with DTI during the administration of the Contract. For the reasons stated above, the Government breached its obligation of good faith and fair dealing.

83. As a result of CBP's actions, DTI is entitled to damages in the form of lost profits for the base period of the DTI Contract and for each of the option periods.

## COUNT V
## Breach of Contract -- Obligation to Provide Impartial, Fair and Equitable Treatment to All Contractors

84. Paragraphs 1 through 83 of this Complaint are incorporated in this Count by reference as if fully set forth herein.

85. Section 1.602 of the FAR imposes an obligation on the Government to ensure that all contractors "receive impartial, fair and equitable treatment." Section 3.101 of the FAR requires that all government business "be conducted in a manner above reproach . . . with complete impartiality and with preferential treatment for none."

86. For the reasons stated above, the Government, acting by and through the CBP Contracting Officer, the Ombudsman, and other contracting officials, breached these obligations.

87. As a result of CBP's actions, DTI is entitled to damages in the form of lost profits for the base period of the DTI Contract and for each of the option periods.

**COUNT VI**
**Breach of Contract -- Illegal Constructive Termination**

88. Paragraphs 1 through 87 of this Complaint are incorporated in this Count by reference as if fully set forth herein.

89. CBP's decision to award a task order to ATI for the balance of DTI's base contract period and then its failure to exercise the option is tantamount to a constructive termination of DTI's contract.

90. CBP's termination followed prior breaches of DTI's Contract and constitutes an abuse of discretion, a failure to act in accordance with its stated intentions (including misrepresentations made to this Court), and repeated acts of bad faith.

91. CBP's constructive termination constitutes a breach of DTI's Contract.

92. As a result of CBP's actions, DTI is entitled to damages in the form of lost profits for the base period of the DTI Contract and for each of the option periods.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment awarding Plaintiff damages in accordance with applicable law, plus interest, costs and other such relief as the Court may deem appropriate.

Respectfully submitted,

Dated: August 27, 2008

Daniel J. Kelly
McCarter & English, LLP
265 Franklin Street
Boston, MA 02110
(617) 449-6526
(617) 326-3088 - Fax

*Of Counsel:*

Gary J. Campbell
McCarter & English, LLP
265 Franklin Street
Boston, MA 021110
(617)449-6558
(617) 326-3097 - Fax

Attorneys for Plaintiff
DIGITAL TECHNOLOGIES, INC.