COPY

DIGITAL TECH
*Quality computer products & services since 1984*

August 10, 2007

Thomas Uberto
Contracting Officer
Department of Homeland Security
Customs & Border Protection
1300 Pennsylvania Avenue, NW – NP1310
Washington, DC 20229

CC: Sandra Bell, Ombudsman
John I. Ely, Director of Procurement
Marion Cordova, Office of the General Counsel
Pamela Castellano, Office of the General Counsel

Re: Claim Under Contract Number HSBP10-06-D-01287

Digital Technologies, Inc. ("DTI") hereby demands a final decision on this claim under the Contract Disputes Act (40 U.S.C. § 601 et seq.) for breach of the above-referenced contract ("Contract" or "DTI 2006 Contract"). Please direct all future correspondence regarding this claim to the undersigned and our attorneys at: Daniel J. Kelly, Esq., McCarter & English, LLP, 265 Franklin Street, Boston, Massachusetts 02110.

The U.S. Department of Homeland Security, U.S. Customs and Border Protection ("CBP") has acted arbitrarily and capriciously, and in bad faith in awarding task orders under the above-captioned contract and constructively terminating DTI's Contract. Specifically, CBP abused its discretion and repeatedly breached the contract by (1) awarding DTI only a one-month task order under the above-captioned IDIQ contract; (2) competing subsequent task orders despite its stated intention to only compete future task orders if there were performance issues with the incumbent, DTI; (3) failing to give DTI a fair opportunity to compete for the subsequent work by allowing Automation Technologies, Inc. ("ATI") to compete for subsequent task orders under a contract that CBP repeatedly described as an "illegal contract," and allowing an improper auction during the task order competition in December 2006; (4) awarding a task order to ATI with the base year plus four one-year options, which covered the remaining contract period, in direct violation of CBP's representations to the Government Accountability Office (GAO) and the United States Court of Federal Claims (COFC) that future work would be competed; and (5) improperly constructively terminating DTI's contract by failing to exercise the option in April 2007, providing further evidence of CBP's intent to not award task orders in the manner described to GAO and the COFC. Throughout this entire period, CBP demonstrated bad faith by conducting itself in a manner designed to fulfill its intended goal of awarding the work to ATI.

**Contains Business Proprietary Information Exempt From Disclosure Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)**

## I. Background

On September 30, 2005, CBP issued Solicitation No. HSBP10-05-R-0541 ("2005 Solicitation" or "2005 RFP") for the purpose of obtaining on-site preventive and remedial maintenance services for CBP mainframe computing equipment and associated peripherals and storage sub-systems for the CBP Data Center Complex located in Springfield, VA and vicinity ("Services"). At the time the 2005 Solicitation was issued, ATI was the incumbent contractor for the Services under a contract with CBP with an expiration date of December 31, 2005.

The Solicitation provided that the award would be made using FAR Part 15 competitive negotiation procedures and be based upon a "best value" determination by the Government. The 2005 Solicitation contemplated the award of a fixed-unit-price, indefinite delivery/indefinite quantity ("IDIQ") contract, commencing January 1, 2006, with a guaranteed minimum of $2500 worth of orders and annual ordering ceilings of $9.9 million in a one-year base period and four subsequent option periods. The Solicitation included FAR Clause 52.216-18 which provides, in part, that supplies and services to be furnished under the contract to be awarded will be ordered by the issuance of task orders, and that such orders "may be issued from award date through one month prior to contract expiration." The Solicitation, in addition, included FAR Clause 52.217-9, which provides in part that the "total duration" of the contract, "including the exercise of any options . . . shall not exceed 5 years." Thus, the maximum contract term contemplated by the Solicitation was five years -- between January 1, 2006 through December 31, 2010.

Based on the sworn testimony of the CBP officials in later COFC and GAO protest proceedings, it was never the intention of the Government to make multiple awards from the 2005 Solicitation, and the 2005 RFP contained neither FAR 25.216-27 ("Single or Multiple Awards") nor any provision for competing task orders among multiple awardees. The Government's intent was manifested by your contemporaneous Determinations and Findings that "the projected task orders are so integrally related that only a single contractor can reasonably perform the work," and the "expected cost of administration of multiple contracts outweighs the expected results of making multiple awards." According to the Government's pre-solicitation documents, the IDIQ vehicle was used because the Government was not in a position to estimate with certainty the Services required during the term of the contract -- not because it anticipated using more than one contractor.

In October 2005, ATI, DTI and one other offeror submitted proposals in response to the 2005 RFP. Following discussions, the three offerors submitted final proposal revisions. On January 4, 2006, CBP published its notice of award to ATI under Contract Award No. HSBP10-06-C-01143 ("ATI 2006 Contract") in the amount of $49,500,000 (ceiling for base year and 4 options). The ATI 2006 Contract provided for an initial one-year term, running from January 1, 2006 through December 31, 2006, with a right to extend the contract for four additional years through the exercise by CBP of four one-year options. ATI's incumbent contract expired on December 31, 2005 and its term was not extended.



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

Following an initial protest with CBP which was summarily dismissed, on January 11, 2006, DTI filed a protest with GAO raising a variety of defects associated with the Government's evaluation of the proposals and subsequent award to ATI ("DTI Bid Protest"). In order to defeat the automatic stay requirements in the Competition in Contracting Act, CBP promptly issued a Determination and Findings ("January 2006 CICA Override D&F") in which you (endorsed by John I. Ely, the Executive Director for Procurement), averred that there was an "immediate and urgent need for maintaining the system mission-critical equipment," and that "no alternatives to resumption of the contract award (and placement of a necessary initial order covering no more than 120 days) are deemed feasible." The January 2006 CICA Override D&F included the following determination: "it is in the Government's best interest to authorize resumption of performance under [the ATI 2006 Contract], including placement of a necessary initial order covering no more than 120 days." Following the January 2006 CICA Override D&F, CBP issued two delivery orders to ATI (Nos. HSBP10-06-J-10058 and -10143) for Services for a 120-day period under the 2006 ATI 2006 Contract in the amounts of $41,324 and $3,175,036 respectively. The orders expired as of April 30, 2006.

On March 20, 2006, GAO conducted an "Outcome Prediction" conference in the DTI Bid Protest proceeding in which it preliminary indicated that CBP improperly entered into discussions with ATI, and that the protest was likely to be sustained. Three days later, on March 23, 2006, CBP's Office of Chief Counsel advised GAO in a letter that CBP would amend the 2005 Solicitation with respect to the pricing and services information, ask each of the three offerors to submit a revised pricing proposal, conduct a new price evaluation, and re-award the contract. CBP told GAO, in light of the January 2006 CICA Override D&F, that "[t]he agency intends to leave in place the current awardee [i.e., ATI], pending the new award decision." In reliance on this letter addressing corrective action by the agency, the GAO dismissed the protest as "academic" in a decision dated March 23, 2006.

On March 31, 2006 and April 6, 2006, CBP issued formal amendments to the 2005 Solicitation and asked for final price proposal revisions by April 10, 2006. The 2005 Solicitation was not amended to include appropriate FAR clauses or provisions providing for multiple awards of task orders under the contemplated contract. Each of the three offerors submitted price proposal revisions. Although the amendments to the 2005 RFP provided that the effective date for the new award would be May 1, 2006 (coinciding with the 4 month task orders issued to ATI), it was not until August 4, 2006 that CBP announced its award -- to DTI -- under Contract Award Number as HSBP10-06-D-01287. On the same day, August 4, 2006, CBP advised ATI by letter that its proposal for the 2005 RFP was determined to not represent the best value to the Government, was rejected, and that DTI would be the awardee, effective September 1, 2006. This was followed by an August 7, 2006 "written debriefing" in letter form to ATI in which the Government stated that it was "not willing to pay significantly more for a minor difference in the non-cost or price factors rating."

DTI's contract provided for a base period of September 1, 2006 through April 30, 2007, and four one-year option periods (the "DTI 2006 Contract"). The DTI 2006 Contract contained no clauses nor procedures for multiple awards.



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

During the time the Government reopened the 2005 Solicitation after representing to GAO that it would take corrective action (which caused GAO in reliance thereon to dismiss DTI's protest as moot), the Government continued to issue task orders under the January 2006 ATI Contract extending the performance dates beyond the original April 30, 2006 cut-off established in the January 2006 CICA Override D&F. On April 28, 2006, CBP issued Delivery Order No. HSBP10-06-J-11174 extending the period for providing the Services until June 30, 2006 at a price of $1,568,438.00. On June 30, 2006, CBP issued Delivery Order No. HSBP10-06-J-11849 extending the period for providing the Services until July 31, 2006, at a price of $781,954. On July 25, 2006, CBP issued Delivery Order No. HSBP10-06-J-12078 extending the period of providing the Services until August 31, 2006 at a price of $774,940. The last Delivery Order was issued ***one day*** prior to the actual execution of the DTI 2006 Contract (on July 26, 2006).

As the Government later acknowledged in sworn statements and briefs submitted to GAO and the COFC, these task orders were illegal sole source procurements because the January 2006 ATI Contract had been rendered a nullity as result of the Government's decision to re-open competition for it in light of GAO's assessment that DTI's protest had merit. For instance on September 19, 2006, CBP's Office of Legal Counsel advised the GAO that ATI was the beneficiary of an "improper contract award." CBP's lawyers advised GAO that ATI's task orders were "bridge" task orders to prevent CBP from going without the Services during the pendency of the legal challenges, a "mere fluke in the bid protest process," and "not [] a properly-won contract award."

On August 11, 2006, ATI filed a protest with GAO of CBP's decision to award the 2005 Solicitation to DTI. On August 16, 2006, CBP's contracting officials executed a second CICA Override Determinations and Findings ("August 2006 CICA Override D&F") stating that ATI's protest was without basis and that contract performance by DTI would result in significant savings to the Government. Following the override decision, CBP sent a fax to DTI on August 17, 2006, notifying it that it was authorized to commence performance under its new contact and attached a Task Order for Services at DTI's bid price for the period September 1, 2006 through October 31, 2006. ATI, however, elected to challenge the validity of the override decision in the COFC which resulted in a decision by the Court on August 31, 2006, in which the Court set aside the override decision as arbitrary and capricious.

As a result of the Court's decision, the Government issued on September 1, 2006, a modification to DTI's task order "deobligat[ing] all funding." At the same time, it issued ATI a new task order (No. HSBP10-06-J-12777) under its illegal contract for a three month period ending November 30, 2006 at a price of $2,325,366 (representing an increased cost of approximately $210,000 for the two-month period pertaining to the DTI cancelled task order). In the subsequent GAO and COFC proceedings referred to above, both the Contracting Officer and CBP's Office of Legal Counsel characterized this task order as an illegal contract. As stated, the new task order was issued under the January 2006 ATI Contract which had been rendered a nullity by the prior CBP action. CBP did not issue a new contract nor did it engage in the sole source procedures required by FAR Subpart 6.3.



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

In defense of ATI's bid protest, CBP began to change its position with respect to its January 2006 ATI Contract. While in the past, CBP's procurement documents, and its prior representations to GAO and the parties, made clear that that the 2005 RFP was designed to result in one awardee whose proposal represented the best value to the Government, CBP's lawyers advised GAO in an August 22, 2006 request for dismissal that because it never terminated ATI's illegal contract, it would remain in full force and effect until January 4, 2007. In reliance on these representations, GAO dismissed ATI's protest in a September 6, 2006 decision finding that ATI, because it was eligible for task orders under its own contract, had no standing to challenge the award of task orders to DTI under its contract. Following this dismissal, CBP modified ATI's task order to terminate and discontinue all of ATI's work as of October 31, deobligating further funding. In discussions on September 7 and 8 between ATI's Senior Vice President for Programs and the Contracting Officer's Technical Representative, the Government confirmed that CBP intended to award all the contract work to DTI effective November 1, 2006, and to use only DTI for its future requirements. In a September 19, 2006 submittal to GAO in response to ATI's motion for reconsideration, CBP's lawyers elaborated on this position stating unambiguously that the ATI January 2006 Contract was improper and that the Government has no intention of extending ATI's contract any further through the exercise of an option.

After seeing its bid protest dismissed by GAO, on October 7, 2006, ATI switched forums by filing the protest with the COFC. In the Government's pleadings defending the protest, the Government reiterated its argument that the protest should be dismissed because of ATI's lack of standing due ATI's having its own IDIQ contract with CBP. In a sworn statement before the COFC, you stated that CBP's intent was to only have one contractor performing the work, but CBP "may utilize the services of either contractor over the coming months should severe performance difficulties arise with the incumbent, be it ATI or DTI." The COFC dismissed the protest. DTI became the incumbent contractor.

## II. Breach of Contract Claims

### 1. CBP materially breached the Contract when it abused its discretion by only awarding DTI a 1-month task order, and then awarding ATI a task order for the remainder of the requirement.

CBP abused its discretion in failing to act in accordance with DTI's 2006 Contract, or as CBP stated it would act to both GAO and the COFC. Upon information and belief, the Government misrepresented its position to the COFC. The Government had no intention of maintaining two contractors under a multiple award procurement. Nor did it have any intention of staying with the incumbent contractor unless "severe performance difficulties arise[] with the incumbent." Rather, the Government elected to embark on a strategy to take advantage of the fact that ATI was in place as a "second" contractor under an illegal contract by engaging in an improper auction of the original 2005 Solicitation under the guise of a task order competition. This strategy was done in bad faith and designed to deprive DTI of the fruits of the contract it had validly won in its competition with ATI.



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

The Government's strategy was accomplished as follows: On October 27, 2006, CBP unilaterally modified DTI's Contract (Modification P00001) (and presumably ATI's contract) to include multiple award task order procedures under FAR 16.505(b)(1)(ii). The procedures, consisting of one page, provided for the appointment of Ms. Sandra Bell as Task Order Ombudsman, and that "[t]ask orders will be issued such that one awardee will be performing tasks under the contract at any one time, for no less than one month per order." Moreover, the procedures provided that the issuance of the next task order would be "on the basis of the best value to the government based on the revised proposals submitted by the ***awardees*** pursuant to the corrective action taken in the protest of the first award of this contract, and in accordance with the dismissal of the protest in Automation Technologies, Inc. v. United States, No. 06-694 (Fed. Cl. 2006)." (Emphasis added). The language lacked any reasonable basis because DTI was the sole awardee as a result of the corrective action and the dismissal of ATI's protest by the COFC. Finally, the procedures provided that "subsequent" task orders would be issued on a "best value determination" with price and "past performance on ***earlier task orders***" as the only factors would be considered. The language was inherently unfair and prejudicial to DTI since DTI, as a result of the CBP's initial improper award to ATI and CBP's subsequent issuance of task orders only to ATI, had never been permitted to perform on a task order. On the same day, October 27, 2006, CBP issued a one-month task order (for the period November 1 through 30, 2007) to DTI but indicated that future task orders would be competitively bid between DTI and ATI under its illegal contract.

On or around November 17, 2006, the Government issued Modification P00002 to DTI and ATI of their respective contracts which revised and supplemented the Multiple Award Order Placement Procedures originally included in the first modification. These procedures (as opposed to the October 27, 2006 procedures), provided for the issuance of one task order and the inclusion of option periods to the task order -- a significant change in the prior procedures. Modification P00002 was the direct result of back door secret meetings and communications between the newly appointed ombudsman, Bell, and lawyers for ATI. These meetings were not disclosed to DTI; nor was DTI permitted to comment on the changes in procedures. Upon information and belief, it was agreed in these meetings that the Government would issue a single task order which would permit one contractor to perform for the remainder of DTI's Contract and option periods and beyond. Modification P00002 was backdated to October 27, 2006 and was represented as the subject of a "mutual agreement" between CBP and DTI. DTI never agreed to the Modification and refused to sign it. The Government's actions were in direct violation of the sworn statements it had made to GAO, the COFC and to DTI that it would remain with the incumbent contractor (i.e., DTI) unless significant performance issues arose during the incumbent contractor's performance. Moreover the unilateral addition of DTI's contract to include multiple award task order procedures represented a cardinal change and a breach of its contract.

Where the Government does not intend to act in accordance with its stated intentions, it has abused its discretion. CBP acted to deny DTI from any further work under its contract. DTI's contract guaranteed more than a minimum amount of sales, it guaranteed that DTI would be fairly considered for task orders. Every contract carries with it an implied promise that the



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

parties will act in good faith and will deal fairly during the administration of that contract. Restatement (Second) of Contracts § 205 (1981) ("Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement."). "The need for mutual fair dealing is no less required in contracts to which the government is a party, than any other commercial arrangement." *Maxima Corp. v. United States*, 847 F.2d 1549, 1556 (Fed. Cir. 1988). Here, as parties to the contract, DTI and CBP owed each other a duty of good faith and fair dealing.

Additionally, under the FAR, contracting officers have considerable discretion but are required to ensure that all contractors "receive impartial, fair, and equitable treatment." FAR § 1.602. The FAR also requires that all government business "be conducted in a manner above reproach . . . with complete impartiality and with preferential treatment for none." FAR § 3.101. The CBP officials failed to comply with these duties.

CBP did not insulate itself from liability by issuing the one-month task order to DTI to meet the minimum requirements of the Contract. In *Community Consulting International*, A.S.B.C.A. No. 53489, 02-2 BCA ¶ 31,940 (2002), the Board rejected the Government's argument that its legal obligations to the contractor under the contract ended after it had purchased the guaranteed minimum, holding that while the guaranteed minimum clause obligates the Government to order a specified amount of services, a contractor is protected by other contract provisions that imply that it will be fairly considered for future task orders. *Id.* at 10-11.

CBP awarded DTI a one-month task order to meet the contractual minimum order requirement, and had no intention of awarding DTI any further work despite no performance issues during DTI's task order. In *Appeal of Tamp Corporation*, A.S.B.C.A. No. 25692, 84-2 BCA ¶ 17460 (1984), the Board found the Government had abused its discretion and breached the contract when it terminated an extension because the contracting officer could award the contract to a lower priced competitor. There the contracting officer awarded a follow contract to another vendor, and terminated Tamp's contract one month into the extension. The Board found that the contracting officer's "undisclosed intention" to terminate the contract when he entered into the extension made a mockery of his ostensibly reluctant assent to a two month, rather than a one month extension. *Id.* Here, CBP made a mockery of the procurement process by conducting a competition, awarding a single contract to DTI, only allowing DTI to perform for one month, stating it would conduct a competition for subsequent work, and then directing all of the remaining work to ATI, as CBP apparently always intended. This abuse of discretion is clear and convincing evidence of CBP's bad faith. *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301 n.1 (Ct. Cl. 1976) (acknowledging that the court has historically equated abuse of discretion and bad faith).

2. **CBP materially breached the Contract further because it failed to give DTI a fair opportunity under the "Order Placement Procedures (Multiple Award)" clause.**



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

Even if CBP's decision to only allow DTI to perform one month under its contract, and then compete future task orders was not an abuse of discretion, CBP materially breached DTI's Contract by failing to provide DTI a fair opportunity during the task order "competition."

On November 15, 2006, CBP issued to ATI and DTI a request for quotations (HSB10-07-Q-0957) ("RFQ") under their respective contracts for a task order for a ten-month base period (commencing December 1, 2006 and ending on September 30, 2007) and four option years (through September 30, 2011). In other words, the Government indicated its intent to compete a task order, ostensibly under a multiple-award task order which CBP maintained arose from the January 2006 RFP ***which would result in the awardee being the sole contractor for the remainder of the base year contemplated by the original solicitation and the remainder of the base year in ATI's contract (through December 31, 2006), the remainder of the base year of DTI's contract (through April 31, 2007), an additional five months (through September 30, 2007), and the possibility (by means of the exercise of options) that the awardee would be the sole contractor through September 30, 2011.*** Unless DTI was successful in this new "competition"—for essentially the same work that DTI competed and won in July 2006—the Government's actions would effectively deprive DTI of any additional work, unless the Government chose to exercise options under DTI's contract and unless the Government chose not to exercise options under the contemplated task order awarded to ATI.

The RFQ used the procedures in Modification P00002 which had not even been disclosed to DTI at the time the RFQ was issued and was the subject of the back-door agreement between ATI's lawyers and CBP. Moreover, in accordance with the back-door agreement between ATI and CBP, CBP fixed it so that ATI had an opportunity by means of an improper auction to supplant DTI as the contractor for the January 2006 RFP. The Government breached DTI's contract and acted illegally and arbitrarily and capriciously in permitting ATI to bid on the RFQ and creating a term for the contemplated Task Order which extended through September 30, 2011 for the following reasons: (1) ATI's January 2006 Contract, pursuant to which the RFQ was issued, was illegal and a nullity; (2) ATI's January 2006 Contract expired as of December 31, 2006 (and the Government had represented previously that it had no intention of and could not as a matter of law extend that contract through the exercise of an option); (3) ATI's January 2006 Contract specifically prohibited the issuance of orders in the last thirty days of the base year term; and (4) ATI's January 2006 Contract expressly limited the term of the contract (which it was required to do by statute and regulation) to five years; and (5) the Government effectively shut out DTI of any opportunity to be considered for any additional work.

On November 21, 2006, DTI wrote to you objecting to the issuance of the RFQ. DTI properly characterized the Government's actions as a "downselection," and noted that the Government's actions betray its intent not to issue any further RFQs for the requirement. DTI objected to the use of past performance on prior task orders as inherently discriminatory given the exclusion of DTI on prior task orders. Finally, DTI, having now performed for three weeks under its November Task Order, notified CBP that the RFQ significantly underestimated the types and number of equipment which required maintenance under the contract. DTI saw this as an opportunity for ATI to significantly underbid DTI based upon an understanding ATI would



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

have developed as a result of its prior performance that the task order, once awarded, would be modified and its price increased to reflect the true requirements. DTI also raised these issues with the newly appointed Ombudsman. DTI received no meaningful response.

DTI (along with ATI) submitted a quote in response to the RFQ on November 27, 2006. While DTI's quote was responsive to the CLINs identified in the RFQ, ATI's was not in that it added four additional CLINs. On November 30, 2006, ***three days later***, the Contracting Officer notified DTI that an award under the RFQ had been made to ATI based upon technical ratings and the prices proposed. On or around December 1, 2006, CBP issued Task Order No. HSBP10-07-Q-0959 ("December 2006 Task Order"). The Task Order listed the four additional CLINs proposed by ATI but not included in the RFQ. Upon information and belief, the pricing for the Task Order (either by the original order or by means of an amendment) has been increased over and above the amount bid by ATI in response to the RFQ to reflect the actual work requirements of the contract. In the span of three days, the Government improperly and illegally re-awarded the contract work provided for in the 2005 Solicitation which DTI had won to the losing bidder -- ATI.

CBP's failure to give DTI fair opportunity to compete for future work is a breach of contract. *Community Consulting International*, A.S.B.C.A. No. 53489, 02-2 BCA ¶ 31,940 (2002); *Burke Court Reporting Co.*, D.O.T.B.C.A. No. 3058, 97-2 BCA ¶ 29,323 (1997). In *Community Consulting*, discussed above, and *Burke Court Reporting*, the contractors received more than the guaranteed minimum under multiple award, indefinite quantity, task order contracts. Yet, in both cases, the Boards found that the Government failed to give the contractors bringing the claims a fair opportunity to compete for the award. Here, CBP breached this contract requirement by having DTI compete with an illegal contract, conducting an improper auction, using an ordering procedure that was not disclosed to DTI prior to issuance of the RFQ, and unfairly disclosing the true scope of work to ATI, but not DTI. Generally, the risk of an auction is of secondary concern when considering the integrity of the procurement process. *Ford Aerospace Corp. et al.*, B-239676.2 et al., Mar. 8, 1991, 91-1 CPD ¶ 260. However, where, as here, there is no impropriety in a contract award, there is no benefit to the procurement system that could justify reopening a competition after offerors' competitive positions have been compromised by disclosure of the awardee's price. *National Medical Staffing, Inc.* B-242585.3, July 1, 1991, 91-2 CPD ¶ 1. Here, by competing a task order for substantially the same base period plus four option years less then four months after DTI's contract award and disclosure of its price, CBP treated DTI unfairly in violation of the order placement clause of the Contract.

It is an abuse of discretion and fundamentally unfair to require DTI to compete for task orders with a contractor holding an illegal contract, and then to conduct that competition improperly and with the contractors on unequal footing.

**3. CBP improperly constructively terminated DTI's contract.**

After the unfair competition for the task order in December 2006, DTI received no further work nor was it asked to participate in any additional task order competitions. No



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

options were exercised under DTI's contract so that it expired on April 30, 2007. In sum, DTI received work for only one month -- November 2006. Upon information and belief, ATI's illegal contract was extended by means of an option, and ATI is the only contractor performing and eligible to perform the Services.

In certain instances, the Government's failure to exercise an option will be held to be improper. While the Government may have broad discretion in exercising option periods, the boards and courts have placed a limitation on the Government's otherwise unfettered discretion, The Government must not abuse its discretion but act in good faith and not arbitrarily and capriciously. *Appeal of Monarch Enterprises*, ASBCA No. 31375, 86-3 BCA ¶ 19227 (Aug. 7, 1986). In *Northrop Grumman Computing Systems, Inc. v. General Services Administration*, GSBCA No. 16367, 2006 WL 1776562 (Jun. 26, 2006). Northrop sought payment for the third year of a lease of a storage area network. GSA moved for summary judgment maintaining that no payment was due as a matter of law because it did not exercise its option to continue the lease for the third year. The Board found that the Government's right to exercise the option was restricted, and that it improperly failed to exercise the option. CBP's failure to exercise the option in DTI's contract is tantamount to a constructive termination. Where, as here, that termination is improper, then CBP cannot seek cover under the termination for convenience clause. Instead, it will be liable for breach.

Generally, where a contract includes the termination for convenience clause, a Government directive to end performance of the work will be considered a convenience termination, if it properly comes under that clause, even though the contracting officer erroneously terminates the work on some other ground. *Maxima Corporation v. United States*, 847 F.2d 1549, 1553 (1988) (reversing improper application of the termination for convenience clause). Constructive termination is applied when the basis upon which a contract was initially terminated is legally inadequate to justify the actions taken. *Id.* However, the termination for convenience clause is not a complete shield from liability for the Government. When the Government breaches a contract, it is not given the protection of the termination for convenience clause.

Case law makes clear that termination for convenience, whether actual or constructive, cannot be used with unfettered discretion, "it is not an open license to dishonor contractual obligations." *Id.* The Government may not use the standard termination for convenience clause to dishonor, with impunity, its contractual obligations. *Torncello v. U.S.*, 231 Ct.Cl. 20 (1982).

The Government will be precluded from using the termination for convenience clause where it has committed a prior breach or acted in bad faith. In *Apex International Management Services, Inc.*, A.S.B.C.A. Nos. 44647 et al., 94-2 BCA ¶ 26,842 (1994) the Board declined to convert an improper default termination into a termination for convenience because it had found that the government had acted in bad faith. Similarly, in *Travel Centre v. GSA*, the Board invalidated an agency's termination for convenience after determining that the agency "had no intention of fulfilling its promises" to the contractor.



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

Here, CBP considered having a single-source IDIQ, then contracted for a multiple-award IDIQ. Additionally, it stated to the COFC that it intended to compete future task orders, not a single task order. CBP's reversion to a single IDIQ is an example of the Government terminating a contract for convenience to allow it to follow an option considered but previously rejected. Therefore, CBP materially breached the Contract when it abused its discretion by failing to act in accordance with its stated intentions, and failed to exercise the option in DTI's contract, for which the Government owes DTI damages.

## III. Amount of Claim

DTI demands a sum certain of $9,377,985.10[1] Due to CBP's breach of contract, DTI is entitled to "award damages sufficient to place the injured party in as good a position as he or she would have been had the breaching party fully performed." *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997). Lost profits are one type of damages awarded because it gives the party the benefits it would have received but for the breach. *Cal. Fed. Bank, FSB v. United States*, 245 F.3d 1342, 1349 (Fed. Cir. 2001). DTI had a contract for a base period and four option years. If CBP had not breached the contract, DTI would have received $9,377,985.10 in profits.

In *Ardco, Inc.* A.G.B.C.A. No. 2003-181-1, 06-2 BCA ¶ 33,352 (2006), Ardco sought lost profits for task orders not issued due to the government's breach. The Board stated:

> The cases show that anticipatory profits are available as a remedy when the Government takes work that is earmarked for the claimant contractor and diverts it to another source. That is notwithstanding the fact that those contracts contained a Termination for Convenience clause and notwithstanding the fact that the Appellant was not required to show bad faith on the part of the Government. While we acknowledge that there is a factual difference in those cases from the one before us, there is also a similarity, in that the work for which the contractor sought anticipatory profits was work that had been made non-available because of an un-excused Government action, in those cases, conscious diversion of the work.

DTI faced a similar result here. The work for which it had properly competed and won a contract has improperly been diverted to ATI. This is a different situation than if the Government did not award task orders due to lack of need. "Had the work not been performed . . . the contractor should not be paid for work that was not required. However, that is not the fact here. Here the Forest Service had the flights performed by someone else. The Appellant lost the benefit of its bargain." *Id.*

DTI's ability to perform was diverted by CBP's abuse of its discretion in recompeting the work even though there were no performance problems in DTI's performance, and by then

[1] See the Attachment for support of how DTI calculated this lost profits damages total.



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

having DTI compete with an illegal contract. Additionally, as detailed above, its conduct throughout the entire procurement period has demonstrated its bad faith intention to give all of the work to ATI. Therefore, DTI is entitled to lost profits not only for the base period, but for each of the option periods also.

## IV. Certification

I certify that the above claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which DTI believes the Government is liable; and that I am duly authorized to certify the claim on behalf of DTI.

Sincerely,

John F. Klein, CEO
Digital Technologies, Inc.
45150 Business Court, Suite 550
Sterling, VA 20166

703-481-5000 (Voice)
703-467-9363 (Fax)



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)

Attachment

Calculation of Damages

| | | | |
|---|---|---|---|
| Amount Billed by DTI for 11/1/06 to 11/30/06 performance period | | $704,182.04 | |
| Less: Direct Expenses | | | |
| IBM | $121,312.87 | | |
| VION | $94,316.35 | | |
| Fujitsu | $318,044.00 | | |
| Total Direct Expenses | | $533,673.22 | |
| Gross Profit | | $170,508.82 | |
| | | | |
| | | | |
| Lost Profit Calculation for Base Year (9/1/06-4/30/07, less 11/06) | $170,508.82 X 7 months | | $1,193,561.74 |
| Lost Profit Calculation for Option Year 1 | $170,508.82 X 12 months | | $2,046,105.84 |
| Lost Profit Calculation for Option Year 2 | $170,508.82 X 12 months | | $2,046,105.84 |
| Lost Profit Calculation for Option Year 3 | $170,508.82 X 12 months | | $2,046,105.84 |
| Lost Profit Calculation for Option Year 4 | $170,508.82 X 12 months | | $2,046,105.84 |
| | | | $9,377,985.10 |



Contains Business Proprietary Information Exempt From Disclosure
Under the Freedom of Information Act, 5 U.S.C. § 552(b)(4)